UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ANDREW N. PECK, RICHARD E. :
PECK II, BRETT J. LISAK, GEORGE :
RUA, LISA M. BEAUSOLEIL, :
RANDY O. CROWE, HAYLEY MORIN, :
THOMAS R. WALKER, JR., :
MACKENZIE R. BEAUSOLEIL, and :
RYAN E. PECK, : C.A. No. 22-cv
    *Plaintiffs* : **Jury Trial Demanded**
     :
v. :
     :
PASCOAG FIRE DISTRICT, alias, :
    *Defendant* :
     :

**COMPLAINT**

**I.      Introduction**

1.  This is an action brought by Plaintiffs Andrew E. Peck, Richard E. Peck II, Brett J. Lisak, George Rua, Lisa M. Beausoleil, Randy O. Crowe, Hayley Morin, Thomas R. Walker, Jr., Mackenzei R. Beausoleil, and Ryan E. Peck ("Plaintiffs") against their employer, Pascoag Fire District, alias, seeking compensatory, liquidated, and punitive damages, counsel fees, costs and other equitable relief arising out of violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Rhode Island Payment of Wages Act ("RIPWA"), R.I. Gen. Laws § 28-12-1, *et seq.* and § 28-14-1, *et. seq.*

**II.     Parties**

2.  Plaintiff Andrew N. Peck is a resident of the Town of Burrillville, County of Providence, and State of Rhode Island.

3.  Plaintiff Richard R. Peck II is a resident of Town of Burrillville, County of Providence, and State of Rhode Island.

4.  Plaintiff Brett J. Lisak is a resident of the Town of Uxbridge, County of Worcester, and Commonwealth of Massachusetts.

5. Plaintiff George Rua is a resident of Town of Burrillville, County of Providence, and State of Rhode Island.

6. Plaintiff Lisa M. Beausoleil is a resident of Town of Burrillville, County of Providence, and State of Rhode Island.

7. Plaintiff Randy O. Crowe is a resident of Town of Gloucester, County of Providence, and State of Rhode Island.

8. Plaintiff Hayley Morin is a resident of Town of Burrillville, County of Providence, and State of Rhode Island.

9. Plaintiff Thomas R. Walker, Jr. is a resident of Town of Burrillville, County of Providence, and State of Rhode Island.

10. Plaintiff Mackenzie R. Beausoleil is a resident of Town of Burrillville, County of Providence, State of Rhode Island.

11. Plaintiff Ryan E. Peck is a resident of Town of Burrillville, County of Providence, State of Rhode Island.

12. Defendant Pascoag Fire District, alias, is a quasi-municipal corporation, duly organized and incorporated pursuant to a charter granted by the General Assembly of the State of Rhode Island, with its principal place of business located at 141 Howard Avenue, Burrillville, Rhode Island.

### III.   Jurisdiction

13. The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this matter pursuant to the provisions of 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law; specifically, the FLSA.

14. Supplemental jurisdiction over the state law claim set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case or controversy.

## IV.   Venue

15. Pursuant to the requirements set forth in 28 U.S.C. § 1391, venue is proper in this Court insofar as Defendant is a Rhode Island entity, operating in the State of Rhode Island and therefore is deemed to reside in the District of Rhode Island.

16. In addition, a substantial part of the acts and/or omissions giving rise to the claims asserted herein occurred in the District of Rhode Island.

## V.   Material Facts

### *FLSA Liability Allegations*

17. At all times relevant to this action, Plaintiffs were "employees" within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA as well as within the meaning of R.I. Gen. Laws §§ 28-12-2(5) and 28-14-1(2) of the RIPWA employed by the Defendant.

18. At all times relevant to this action, Defendant was an "employer" within the meaning of 29 U.S.C. § 203(d) of the FLSA as well as within the meaning of R.I. Gen. Laws §§ 28-12-2(7) and 28-14-1(3) of the RIPWA employing the Plaintiffs.

19. At all relevant times, Plaintiffs were "engaged in commerce or in the production of goods for commerce" within the meaning of, *inter alia*, 29 U.S.C. §§ 203 (b), (i)-(j), 206(a), and 207(a), as an employee employed by and performing work for Defendant.

20. At all relevant times, Defendant was engaged in related activities performed through unified operation and/or common control for a common business purpose and are, and at all times hereinafter mentioned, were an enterprise within the meaning of 29 U.S.C. § 203(r).

21. At all relevant times, Defendant was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of, *inter alia*, 29 U.S.C. §§ 203(s).

### *Work Performed for Defendant and Defendant's Illegal Pay Scheme*

22. Plaintiffs all work for Defendant as per-diem Firefighters/Emergency Medical Technicians ("Firefighter/EMTs").

23. Plaintiffs respond to both fire and EMT calls and provide firefighting and EMT services including, for example, administering first aid, transporting people with medical issues to medical facilities, and firefighting.

24. As per-diem Firefighter/EMTs, Plaintiffs are compensated for work performed at an hourly rate of pay.

25. However, Plaintiffs also work as Firefighter/EMTs for Defendant, performing the same exact job duties/services as per-diem Firefighter/EMTs, on a volunteer basis for which they are not paid and only occasionally receive a small, nominal stipend depending on the specific work tasks performed.

26. With respect to all Plaintiffs, the work done as paid workers and as volunteers is identical in all respects other than pay, or lack thereof.

27. As such Defendant pays the Plaintiffs an hourly rate for some hours, nominal pay below minimum wage for some hours, and no pay at all for other hours, all while Plaintiffs were doing the same work, tasks, and jobs

28. This payment scheme violates both the RIPWA and the FLSA.

29. The FLSA makes it clear that individuals may volunteer services to the public agency by which they are employed *only* where the individual 1) performs hours of service for civic, charitable or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered other than the payment of expenses, reasonable benefits or a *nominal* fee, 2) offers the services freely and without pressure or coercion, direct or implied; and, 3) <u>is not otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer</u>. 29 U.S.C. §203(e)(4)(A); 29 C.F.R. §§553.101 and 553.103 ("[A] firefighter cannot volunteer as a firefighter for the same public agency.")

30. Insofar as Plaintiffs are employed by the same public agency to perform the same type of services as those for which they also "volunteer," the pay scheme employed by the

Defendant whereby it receives "volunteer" services from Plaintiffs without compensation or nominal compensation is expressly forbidden under applicable law.

31. Consequently, Plaintiffs are owed compensation at their regular hourly rate for all hours worked wherein Defendant classified them as "volunteers" and did not provide their regular hourly rate for those hours worked.

32. From 2020 to 2022, Defendant had four different Fire Chiefs, at least two (2) of whom, Chief Carter and Chief St. Pierre, expressed concerns to Defendant that its pay scheme described herein was unlawful.

33. Chief St. Pierre and Plaintiff Richard Peck II, who at all relevant times served as Deputy Fire Chief, both explicitly told the chairperson of the Defendant's governing board, Christopher Toti, that the pay scheme described herein was unlawful.

34. Further, Plaintiff Andrew Peck also informed Defendant that this pay scheme was and is unlawful.

35. Plaintiff Andrew Peck also contacted various state and federal agencies about the unlawful pay scheme matter, disclosed these communications to Defendant, and attempted to resolve and correct the unlawful pay scheme issue directly with Defendant.

36. However, Defendant refused and continues to refuse to institute a pay scheme that comports with the requirements of the FLSA and RIPWA.

*Plaintiff Andrew Peck*

37. Plaintiff Andrew Peck has been employed by the Defendants since December 10, 2018 as a Firefighter/EMT.

38. Plaintiff Andrew Peck is currently employed at the rate of approximately $19.00. per hour when he is working paid shifts as a per diem Firefighter/EMT.

39. Plaintiff Andrew Peck is paid a maximum total yearly stipend of up to $500 for certain work done while working "volunteer" shifts performing the same work as when he is

working as a per diem Firefighter/EMT, but is not paid for all "volunteer" hours worked doing the same work he performs when working a paid shift as a per diem Firefighter/EMT.

40. For example, from November 1, 2020 through October 31, 2021, Plaintiff Andrew Peck worked approximately One-Hundred Seventy-Three (173) unpaid volunteer hours.

### *Plaintiff Richard Peck II*

41. Plaintiff Richard Peck II has been employed by Defendant since April 22, 1994.

42. He worked as a fulltime Firefighter/EMT until he switched to part-time in 2008.

43. At all times relevant to the issues in this Complaint he served as Deputy Chief.

44. Plaintiff Richard Peck II was and is subject to the same compensation scheme wherein he is paid for some hours and offered only a nominal stipend for certain other "volunteer" hours all while performing the same work, tasks, and jobs.

45. For example, from November 1, 2020 through October 31, 2021, Plaintiff Richard Peck worked over Four-Hundred Forty-Seven (447) unpaid volunteer hours.

### *Plaintiff Brett J. Lisak*

46. Plaintiff Brett Lisak has been employed by the Defendants since December 9, 2020 as a Firefighter/EMT.

47. Plaintiff Brett Lisak was and is subject to the same compensation scheme wherein he is paid for some hours and offered only a nominal stipend for certain other "volunteer" hours all while doing the same work, tasks, and jobs.

48. For example, between Plaintiff Brett Lisak's hire date and October, 31, 2021, he worked about Seventy-Five and a half (75.5) unpaid "volunteer" hours.

### *Plaintiff George Rua*

49. Plaintiff George Rua has been employed by the Defendants since June 30, 2021 as a Firefighter/EMT.

50. Plaintiff George Rua was and is subject to the same compensation scheme wherein he is paid for some hours and offered only a nominal stipend for certain other "volunteer" hours all while doing the same work, tasks, and jobs.

51. For example, between Plaintiff Geroge Rua's hire date and October, 31, 2021, he worked about Forty-Two and a half (42.5) unpaid "volunteer" hours.

### *Plaintiff Lisa Beausoleil*

52. Plaintiff Lisa Beausoleil has been employed by the Defendants since June 6, 2020 as a Firefighter/EMT.

53. Plaintiff Lisa Beausoleil was and is subject to the same compensation scheme wherein she is paid for some hours and offered only a nominal stipend for certain other "volunteer" hours all while doing the same work, tasks, and jobs.

54. For example, from November 1, 2020 through October 31, 2021, Plaintiff Lisa Beausoleil worked about Twenty-Six and a half (26.5) unpaid volunteer hours.

### *Plaintiff Randy Crowe*

55. Plaintiff Randy Crowe has been employed by the Defendants since June 3, 2019 as a Firefighter/EMT.

56. Plaintiff Randy Crowe was and is subject to the same compensation scheme wherein he is paid for some hours and offered only a nominal stipend for certain other "volunteer" hours all while doing the same work, tasks, and jobs.

57. For example, from November 1, 2020 through October 31, 2021, Plaintiff Randy Crowe worked about Sixteen and a half (16.5) unpaid volunteer hours.

### *Plaintiff Hayley Morin*

58. Plaintiff Hayley Morin has been employed by the Defendants since September 27, 2019 as a Firefighter/EMT.

59. Plaintiff Hayley Morin was and is subject to the same compensation scheme wherein she is paid for some hours and offered only a nominal stipend for certain other "volunteer" hours all while doing the same work, tasks, and jobs.

60. For example, from November 1, 2020 through October 31, 2021, Plaintiff Haley Morin worked almost Two-Hundred Ninety-Nine and a half (299.5) unpaid volunteer hours.

*Plaintiff Thomas Walker, Jr.*

61. Plaintiff Thomas Walker, Jr. has been employed by the Defendants since September 9, 2013 as a Firefighter/EMT.

62. Plaintiff Thomas Walker, Jr. was and is subject to the same compensation scheme wherein he is paid for some hours and offered only a nominal stipend for certain other "volunteer" hours all while doing the same work, tasks, and jobs.

63. For example, from November 1, 2020 through October 31, 2021, Plaintiff Thomas Walker, Jr. worked over One-Hundred Sixty-Seven (167) unpaid volunteer hours.

*Plaintiff Mackenzie Beausoleil*

64. Plaintiff Mackenzie Beausoleil has been employed by the Defendants since July 22, 2019 as a Firefighter/EMT.

65. Plaintiff Mackenzie Beausoleil was and is subject to the same compensation scheme wherein she is paid for some hours and offered only a nominal stipend for certain other "volunteer" hours all while doing the same work, tasks, and jobs.

66. For example, from November 1, 2020 through October 31, 2021, Plaintiff Mackenzie Beausoleil worked over Four-Hundred and Three (403) unpaid volunteer hours.

*Plaintiff Ryan Peck*

67. Plaintiff Ryan Peck has been employed by the Defendants since September 17, 2018 as a Firefighter/EMT.

68. Plaintiff Ryan Peck was and is subject to the same compensation scheme wherein he is paid for some hours and offered only a nominal stipend for certain other "volunteer" hours all while doing the same work, tasks, and jobs.

69. For example, from November 1, 2020 through October 31, 2021, Plaintiff Ryan Peck worked over One-Hundred and Twenty-Eight (128) unpaid volunteer hours.

### *Failure to Compensate Plaintiffs for All Hours Worked*

70. At all relevant times, Plaintiffs are and were non-exempt employees entitled to payment at their regular hourly rates for all hours worked under the FLSA and RIPWA.

71. Plaintiff are and were entitled to compensation in an amount equal to the agreed upon hourly rate as prescribed by the FLSA and RIPWA for all hours worked including purported "volunteer" hours.

72. All purported "volunteer" hours are explicitly barred by the FLSA and the RIPWA and must be compensated at each Plaintiffs' regular hourly rate.

73. The RIPWA broadly defines the word "wages" as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, commission basis, or other method of calculating the amount. *See, e.g.,* R.I. Gen. Laws § 28-12-3 and § 28-14-1(4).

74. Nevertheless, as alleged above, Defendant willfully and repeatedly violated the FLSA and the RIPWA by failing or refusing to compensate Plaintiff for all hours worked at their regular hourly rates.

75. Indeed, despite both actual and constructive knowledge that the pay scheme is unlawful, Defendant has compensated and continues to compensate Plaintiffs according to this illegal scheme.

76. As a consequence of this illegal payment scheme, Plaintiffs worked more than forty (40) hours in a workweek in certain weeks without receiving payment at time and one-half of their

regular hourly rate in violation of both the FLSA and the RIPWA.

## VI.     Claims for Relief

77.     Plaintiffs incorporate the allegations in ¶¶1 through 76 above in each of the counts set forth below.

**Count One**
*Fair Labor Standards Act,*
*U.S.C. § 201, et seq.*

78.     Defendant, by its acts and/or omissions, including, but not limited to, those described herein, violated the FLSA by failing to pay wages and overtime wages for all hours worked as provided therein, thereby causing Plaintiffs to suffer damages as aforesaid, for which they are entitled to relief pursuant to 29 U.S.C. § 216(b).

**Count Two**
*Rhode Island Payment of Wages Act,*
*R.I. Gen. Laws § 28-12-1, et seq., and*
*R.I. Gen. Laws § 28-14-1, et seq.*

79.     Defendant, by its acts and/or omissions, including, but not limited to, those described herein, violated the RIPWA by failing to pay wages and overtime wages for all hours worked as provided therein, thereby causing Plaintiffs to suffer damages as aforesaid, for which they are entitled to relief pursuant to R.I. Gen. Laws § 28-14-19.2 and § 28-14-20.

## VII.     Prayers for Relief

**WHEREFORE**, Plaintiffs pray that this Honorable Court grant the following relief:

1. A declaratory judgment declaring that the acts and/or omissions of Defendant, including, but not limited to those complained of herein, are in violation of the FLSA and the RIPWA.

2. An injunction directing Defendant to take such affirmative action as is necessary to refrain from such conduct as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3. An award of compensatory damages.

4. An award of punitive damages.

5. An award of liquidated damages pursuant to 29 U.S.C. § 216(b).

6. An award of liquidated damages of two times the amount of wages and and/or benefits owed pursuant to R.I. Gen. Laws § 28-14-19.2 and § 28-14-20.

7. An award of reasonable attorney's fees and costs of litigation pursuant to 29 U.S.C. § 216(b).

8. An award of reasonable attorney's fees and costs pursuant to R.I. Gen. Laws § 28-14-19.2 and § 28-14-20.

9. An award of other appropriate equitable relief pursuant to 29 U.S.C. § 216(b).

10. An award of other appropriate equitable relief or penalties pursuant to R.I. Gen. Laws § 28-14-19.2.

11. An award of such other and further relief as this Honorable Court deems just and proper.

### VIII.  Demand for Jury Trial

Plaintiffs hereby demand a trial by jury on all counts so triable.

### IX.    Designation of Trial Counsel

Plaintiffs hereby designate Richard A Sinapi, Esquire, as trial counsel.

Plaintiffs
By their attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

**Dated: September 9, 2022**         /s/ Richard A. Sinapi, Esq.
**Richard A. Sinapi, Esq. (#2977)**
2374 Post Road Suite 201
Warwick, RI 02886
Phone: (401) 739-9690; FAX: (401) 739-9490
Email: ras@sinapilaw.com